UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AUSTIN KNIGHT, <br><br> Plaintiff, <br><br> v. <br><br> FLAKES, BOROLOV, CHEEKS, WEBB, HOSKINS, SHELBY, R. EVANS, JENKINS, RUPERT, CAINE, TALBOT, TRIM, MILLER, J. KENNERK, JOHN GALIPEAU, <br><br> Defendants. | CAUSE NO. 3:22-CV-394-JD-MGG |

OPINION AND ORDER

Austin Knight, a prisoner without a lawyer, filed a 164 paragraph complaint against nineteen defendants based on events alleged to have occurred at the Westville Correctional Facility. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Knight alleges Sgt. Flakes told all the inmates in his dorm he was a snitch on June 27, 2021. ECF 2 at ¶¶ 12 and 15. Shortly thereafter, while Knight was walking laps for recreation with another inmate, Sgt. Flakes yelled at them out the window of her office,

"Whoop his punk a**!" *Id.* at ¶ 17 (asterisks in original). When he returned to the dorm, he alleges inmates threatened him. *Id.* at ¶ 24. Several approached him and he responded by attacking one of the inmates with a sharpened screw. *Id.* at ¶ 25. Knight alleges Officer Shelby told an inmate on August 1, 2021, he was a snitch and "[w]e ain't got no choice but to F him up now." *Id.* at ¶ 85. Knight alleges Officer Cheeks repeatedly told inmates in 2021 he was a snitch who "stole from all his Muslim brothers." *Id.* at 109. Knight alleges Sgt. Flakes told inmates in his housing unit he was a snitch on August 11, 2021, February 6, 2022, February 8, 2022, February 14, 2022, February 15, 2022, and February 17, 2022. *Id.* at ¶¶ 97 and 126. Sgt. Flakes is also alleged to have told them to "make sure you split him and make him bleed." *Id.*

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). To state a claim for failure to protect, a plaintiff must establish the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted). "[I]t's common knowledge that snitches face unique risks in prison . . .." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). Prison officials may be found liable where it can be proven they knew an inmate "faced a significant risk of harm from a 'particular vulnerability' and exposed him to that risk anyway." *Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) (quoting *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005)). Such are the allegations here and they state claims against Sgt. Flakes, Officer Shelby, and Officer Cheeks.

2

Years ago, on June 17, 2016, Knight alleges he had a mental breakdown and attempted suicide four times in the next three months. ECF 2 at ¶ 21. He alleges it was widely known he had a history of mental illness. *Id*. at ¶ 21. He alleges several defendants deliberately psychologically victimized him "in a willful and malicious effort to 'break him mentally.'" *Id*. at ¶ 22. He alleges they "were trying to drive him to suicide with their taunts and mind games." *Id*. at 67. Specifically, he alleges Sgt. Flakes made jokes about him crying after the fight on June 27, 2021. *Id*. at ¶ 27. He alleges an unnamed Internal Affairs Officer said, "let's kill this cocksucker" that it was a "four man job" and "he [Knight] lost his life." *Id*. at ¶¶ 30 and 31. He alleges Officer Borolov, Officer Webb, Lt. Caine, and Sgt. Trim allowed/helped inmates steal his commissary order. *Id*. at ¶¶ 40-48. He alleges Officer Cheeks said "that's what that snitch gets" on July 29, 2021. *Id*. at ¶ 59. Later that day, he alleges Officer Borolov, Officer Cheeks, Lt. Caine and Sgt. Trim, allowed inmates to taunt him after stealing his commissary order. *Id*. at ¶ 60. He alleges they taunted him to "mess with his head." *Id*. at ¶ 63. Sgt. Trim taunted him "saying boo-hoo, they stole my commissary several times." *Id*. at 62. Knight alleges he is Muslim and Lt. Caine told him the wrong direction to face when praying. *Id*. at ¶ 65. He alleges Officer Shelby and Officer R. Evans made non-verbal threats they would attack him while he was cuffed. *Id*. at ¶ 90. He says he took the threats seriously because he had seen Officer Shelby beat a handcuffed inmate. *Id*. at 91. He alleges Sgt. Flakes came to his cell block on August 11, 2021, and told him he "had HIV and was dead anyway" and that when he was transferred to the Miami Correctional Facility he would be killed. *Id*. at ¶ 97. He alleges Sgt. Flakes also harassed

3

him on August 12, 2021, and December 1, 2021. *Id*. at ¶ 99. He alleges Sgt. Flakes cut off a phone call with his wife. *Id*. at ¶ 98. He alleges Officer Shelby told another officer to limit him to one t-shirt, one pair of socks, and one pair of boxers for months. *Id*. at ¶ 101. He alleges that rather than turning in his grievances, Caseworker J. Kennerk told other inmates what he had written in his grievances. *Id*. at ¶ 102.

"[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment[, b]ut some does . . .." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Here, these allegations state a claim against Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, and Caseworker J. Kennerk because Knight alleges these malicious and sadistic efforts to psychologically victimize him were targeted to exacerbate his mental illness and encourage him to commit suicide. The complaint would state a claim against the unnamed Internal Affairs Officer, but "it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997).

Knight alleges Warden John Galipeau turned a blind eye to the harassment because he witnessed it on several occasions, but did nothing to prevent it. *Id*. at 146. He does not say when, how often, nor what he heard. Moreover, it is not plausible to infer he knew the malicious and sadistic intent to exacerbate Knight's mental illness. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

4

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

Knight alleges his property was lost, stolen, or damaged on several occasions. ECF 2 at ¶¶ 33-35, 40-48, and 140. The Fourteenth Amendment provides that State officials shall not "deprive any person of life, liberty, or property, without due process of law," but, a State tort claims act which provides a method to seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by

5

government employees. Those State laws provide an adequate post deprivation remedy to redress State officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Even the destruction of legal materials is merely a property loss if the papers are replaceable. *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir. 1987). Therefore, these alleged property losses do not state a claim.

Knight alleges Officer Jenkins and Officer Rupert placed him in a cell with feces and urine smeared on the floor where he was left to sleep on July 29, 2021. ECF 2 at ¶¶ 53-55 and 66. He alleges Officer Shelby and Officer R. Evans placed him in a cell on August 1, 2021, with feces and urine filling the non-working toilet as well as smeared on the floor and walls. *Id*. at ¶ 83. He alleges Officer Jenkins and Officer Rupert gave him a mat soiled with feces and urine on August 2, 2021. *Id*. at ¶¶ 87-88. The Eighth Amendment requires prison officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Conditions of confinement must be severe to support an Eighth Amendment claim. "[T]he prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 834. The Eighth Amendment only protects prisoners from conditions that "exceed contemporary bounds of decency of a mature, civilized society." *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). "[A] court considering an Eighth Amendment challenge to conditions of confinement must

6

examine the totality of the circumstances. Even if no single condition of confinement would be unconstitutional in itself, exposure to the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment." *Rhodes v. Chapman*, 452 U.S. 337, 362–63 (1981) (footnote, quotation marks, and citation omitted). Moreover, "the duration of the condition . . . determines whether the conditions of confinement are unconstitutional." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). Though Knight may not be able to ultimately demonstrate the severity and duration of these conditions violated the Eighth Amendment, he has plausibly alleged they do.

Knight alleges Officer Shelby, Officer R. Evans, Officer Jenkins, and Officer Rupert violated his right as a Muslim to practice his religion when they placed him in the feces smeared cells because he needed a clean place to pray. ECF 2 at ¶¶ 56, 83 and 159. Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). As such, any First Amendment claim Knight might have would be co-extensive with the Eighth Amendment claim on which he is already proceeding. Though the measure of his damages may be influenced by the feces being a religious imposition as well as a sanitation issue, proceeding on both a First and Eighth Amendment claim based on the same facts would be redundant. *Cf. Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017) (affirming dismissal of Eighth Amendment claim because the same facts

7

comprised a more applicable First Amendment claim); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels").

Knight alleges he showed Officer Cheeks and Lt. Caine a deep, inch-long cut on his eyebrow at 9:00 pm on December 25, 2021. ECF 2 at ¶ 110. At 10:00 pm, Officer Borolov told him there was no nurse available. *Id.* at ¶ 111. At 11:00 pm, Officer Cheeks and either Officer Borolov or Officer Webb took him to a nurse. *Id.* at 113. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Here, the complaint does not provide facts from which it can be plausibly inferred that these defendants were deliberately indifferent by waiting two hours to take him to see a nurse. Neither does it provide facts showing he had an emergency which required immediate attention.

Knight alleges Lt. Talbot and Sgt. Miller put rock salt in his food on March 16, 2022, which made him sick for days. ECF 2 at ¶¶ 134-36. "[P]rison officials must ensure that inmates receive adequate food . . . and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted). This allegation states a claim.

In the Claims for Relief section of the complaint, Knight mentions several other possible legal theories which do not state claims in this case. He asserts a retaliation claim against seventeen defendants. ECF 2 at ¶ 156. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). Here, Knight has not clearly identified what First Amendment activity he engaged in, what deprivation each defendant caused, nor why it is plausible it was motivated by the First Amendment activity.

Knight asserts a State law negligence claim against sixteen individual defendants. ECF 2 at ¶ 157. He also asserts a State law tort claim against four individual defendants for improperly handling his commissary order. *Id.* at 160. State employees who are merely negligent are acting with the scope of their employment. *See* Indiana Code 34-13-3-5(c). Processing commissary orders is within the scope of the defendants' employment. "Under the Indiana Tort Claims Act, there is no remedy against the

9

individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). "Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment." *Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016). "If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive." *Reiner v. Dandurand*, 33 F.Supp.3d 1018, 1033 (N.D. Ind. 2014) (quotations and citations omitted).

> Under Indiana law, an individual is acting within the scope of his or her employment if the conduct is "of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (quoting Restatement (Second) Agency § 229 (1958)). "Even criminal acts may be considered as being within the scope of employment if the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (quotation marks omitted).

*Bishop v. Indiana Dep't of Correction*, No. 3:20-CV-1064-JD-MGG, 2021 WL 2255364, at *2 (N.D. Ind. June 3, 2021).

Knight asserts a state law Intentional Infliction of Emotional Distress claim against sixteen individual defendants. ECF 2 at ¶ 157. The elements of an intentional infliction of emotional distress claim are that the defendant: "(1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). For eight of the sixteen defendants, the complaint does not allege facts from which it can be plausibly alleged that they engaged in extreme and outrageous conduct

10

against Knight. For the other eight, he is already proceeding on Eighth Amendment claims based on the same factual allegations. Because he alleges this conduct caused him to physically injure himself,[1] including this claim would be redundant.[2] *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

Knight asserts Officer Borolov, Officer Cheeks, and Lt. Caine left him in a feces smeared cell. ECF 2 at ¶ 158. In the body of the complaint Officers Shelby, Officer R. Evans, Jenkins and Rupert are mentioned in connection with those allegations, but Borolov, Cheeks, and Caine are not. The complaint does not plausibly allege facts from which it can be inferred those three were personally involved with those incidents.

Knight asserts seven individual defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) when they left him in a feces smeared cell. ECF 2 at ¶ 159. However, RLUIPA only affords injunctive relief. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Because the amended complaint alleges he was released from that cell in 2021, any RLUIPA claim he might have had is moot.

Knight asserts a retaliation claim against Officer Borolov, Officer Webb, Lt. Caine, and Sgt. Trim based on their allowing/helping other inmates steal his commissary items. ECF 2 at ¶ 160. Because he is proceeding against them on an Eighth Amendment claim based on these same facts for maliciously and sadistically

---

[1] ECF 2 at ¶ 49 ("cut a deep gash in his left forearm"), ¶ 57 and 77 ("on hunger and water strike" for four days), ¶ 69 ("carving 'I did not kill me' in his left bicep and left hand . . . with a nail"), ¶ 70 ("pushed the same nail into the vein in the crook of his right arm"), ¶ 105-107 (deep cut on eyebrow after collapsing due to lack of food).

[2] *See* 42 U.S.C. § 1997e(e) which would otherwise prohibit compensation for a mental or emotional injury without a physical injury.

11

psychologically victimizing him to exacerbate his mental illness and encourage him to commit suicide, including this claim would be redundant. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

Knight asserts Officer Cheeks, Officer Hoskins, Officer Shelby, Officer R. Evans, Officer Jenkins, Office Rupert, Lt. Caine, Lt. Talbot, and Sgt. Miller contaminated his food. ECF 2 at ¶ 161. In the body of the complaint Lt. Talbot and Sgt. Miller are mentioned in connection putting rock salt in his food one time, but Cheeks, Hoskins, Shelby, R. Evans, Jenkins, Rupert, and Caine are not. The complaint does not plausibly allege facts from which it can be inferred those seven were personally involved with contaminating his food.

Knight asserts eighteen individual defendants conspired to deprive him of his constitutional rights. ECF 2 at ¶ 162. However, "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [i]s not enough." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). This complaint does not plausibly alleges facts showing a conspiracy by anyone other than possibly those against whom he is already proceeding based on their individual actions. Even if possible, adding a conspiracy claim against them would be redundant. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

Knight asserts Warden John Galipeau and the Indiana Department of Correction failed to properly supervise the other defendants. ECF 2 at ¶ 163. To the extent he is seeking monetary damages, the Indiana Department of Correction has sovereign immunity. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). His injunctive relief

claims will be discussed later in this opinion. As for Warden Galipeau, there is no general supervisory liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). [P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

There is no mention of Officer Bullock or Officer X. Evans in the body of the complaint. Because the complaint does not provide any facts showing they were personally involved in violating Knight's rights, they will be dismissed.

In addition to monetary damages, Knight seeks injunctive relief. He asks that his phone calls not be monitored and the contents shared with other inmates. The complaint alleges his wife called prison officials. ECF 2 at ¶ 13. It alleges other inmates were told about that call. *Id*. at ¶¶ 13 and 15. It does not describe an instance when the contents of his calls were shared with inmates after they were monitored.

Knight asks that his food not be tampered with. The complaint alleges he has often found hair, spit, and mouse feces in his food. ECF 2 at ¶ 96. It is unclear how his food is being contaminated, but Warden Galipeau has both the authority and the responsibility to ensure Knight receives constitutionally adequate food as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Knight asks that the defendants stop psychologically victimizing him and to be transferred to another prison. He was notified on August 16, 2021, that he had been approved for transfer. ECF 2-1 at 10. Relocating him is one way for the alleged

psychological victimization to stop. It is unclear why he has not been transferred, but he will be granted leave to proceed against Warden Galipeau in his official capacity to be free of psychological victimization as required by the Eighth Amendment.

Finally, Knight asks for a preliminary injunction on all of the claims for which he seeks a permanent injunction. ECF 4. However, he is not being granted leave to proceed on all of injunctive relief claims raised in the complaint. For those that are being dismissed, he has no chance of success on the merits and there is no need for Warden Galipeau to resond to them. Knight is proceeding on injunctive relief claims to obtain constitutionally adequate food and to be free from psychological victimization. For those two claims, Warden Galipeau will be ordered to respond in his official capacity.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Additionally,

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). After Warden Galipeau responds, Knight will have thirty days to reply.

For these reasons, the court:

(1) GRANTS Austin Knight leave to proceed against Sgt. Flakes in her individual capacity for compensatory and punitive damages for creating a substantial risk of harm by labeling him a snitch and encouraging inmates to attack him on June 27, 2021, August 11, 2021, February 6, 2022, February 8, 2022, February 14, 2022, February 15, 2022, and February 17, 2022, in violation of the Eighth Amendment;

(2) GRANTS Austin Knight leave to proceed against Officer Shelby in his individual capacity for compensatory and punitive damages for creating a substantial risk of harm by labeling him a snitch and encouraging an inmate to attack him on August 1, 2021, in violation of the Eighth Amendment;

(3) GRANTS Austin Knight leave to proceed against Officer Cheeks in his individual capacity for compensatory and punitive damages for creating a substantial risk of harm by repeatedly labeling him a snitch who stole from his Muslim brothers in 2021, in violation of the Eighth Amendment;

(4) GRANTS Austin Knight leave to proceed against Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, and Sgt. Trim, and Caseworker J. Kennerk in their individual capacities for compensatory, and punitive damages for maliciously and sadistically psychologically victimizing him to

exacerbate his mental illness and encourage him to commit suicide in violation of the Eighth Amendment;

(5) GRANTS Austin Knight leave to proceed against Officer Jenkins and Officer Rupert in their individual capacities for compensatory and punitive damages for putting him in a cell with feces and urine smeared on the floor where he was left to sleep on July 29, 2021, and for giving him a mat soiled with feces and urine on August 2, 2021, in violation of the Eighth Amendment;

(6) GRANTS Austin Knight leave to proceed against Officer Shelby and Officer R. Evans in their individual capacities for compensatory and punitive damages for putting him in a cell on August 1, 2021, with a non-working toilet full of feces and urine which were also smeared on the floor and walls in violation of the Eighth Amendment;

(7) GRANTS Austin Knight leave to proceed against Lt. Talbot and Sgt. Miller in their individual capacities for compensatory and punitive damages for putting rock salt in his food on March 16, 2022, in violation of the Eighth Amendment;

(8) GRANTS Austin Knight leave to proceed against Warden John Galipeau in his official capacity for injunctive relief to obtain constitutionally adequate food and to be free from psychological victimization;

(9) DISMISSES all other claims;

(10) DISMISSES Hoskins, Bullock, X. Evans, John Doe, and Indiana Dept. of Corrections;

(11) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Sgt.

Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Officer Jenkins, Officer Rupert, Lt. Caine, Lt. Talbot, Sgt. Trim, Sgt. Miller, Caseworker J. Kennerk, and Warden John Galipeau at the Indiana Department of Correction, with a copy of this order, the complaint (ECF 2), and the preliminary injunction motion (ECF 5);

(12) DIRECTS the clerk to fax or email a copy of the same documents to Warden John Galipeau at the Westville Correctional Facility;

(13) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(14) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Officer Jenkins, Officer Rupert, Lt. Caine, Lt. Talbot, Sgt. Trim, Sgt. Miller, Caseworker J. Kennerk, and Warden John Galipeau to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(15) ORDERS Warden John Galipeau to file and serve a response to the preliminary injunction, as soon as possible but no later than **June 17, 2022** (with supporting documentation and declarations from other staff as necessary) describing/explaining how Austin Knight is receiving constitutionally adequate food and kept free of psychological victimization as required by the Eighth Amendment; and

(16) GRANTS Austin Knight thirty days to reply to Warden Galipeau's response to the motion for preliminary injunction.

SO ORDERED on May 23, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT