UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AUSTIN KNIGHT,

    Plaintiff,

    v.       CAUSE NO. 3:22-CV-394-JD-MGG

FLAKES, et al.,

    Defendants.

## OPINION AND ORDER

Austin Knight, a prisoner without a lawyer, is proceeding in this case on eight claims. First, he is proceeding "against Sgt. Flakes in her individual capacity for compensatory and punitive damages for creating a substantial risk of harm by labeling him a snitch and encouraging inmates to attack him on June 27, 2021, August 11, 2021, February 6, 2022, February 8, 2022, February 14, 2022, February 15, 2022, and February 17, 2022, in violation of the Eighth Amendment[.]" ECF 9 at 15. Second, he is proceeding "against Officer Shelby in his individual capacity for compensatory and punitive damages for creating a substantial risk of harm by labeling him a snitch and encouraging an inmate to attack him on August 1, 2021, in violation of the Eighth Amendment[.]" *Id.* Third, he is proceeding "against Officer Cheeks in his individual capacity for compensatory and punitive damages for creating a substantial risk of harm by repeatedly labeling him a snitch who stole from his Muslim brothers in 2021, in violation of the Eighth Amendment[.]" *Id.* Fourth, he is proceeding "against Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt.

Caine, Sgt. Trim, and Caseworker J. Kennerk in their individual capacities for compensatory, and punitive damages for maliciously and sadistically psychologically victimizing him to exacerbate his mental illness and encourage him to commit suicide in violation of the Eighth Amendment[.]" *Id.* at 15-16. Fifth, he is proceeding "against Officer Jenkins and Officer Rupert in their individual capacities for compensatory and punitive damages for putting him in a cell with feces and urine smeared on the floor where he was left to sleep on July 29, 2021, and for giving him a mat soiled with feces and urine on August 2, 2021, in violation of the Eighth Amendment[.]" *Id.* at 16. Sixth, he is proceeding "against Officer Shelby and Officer R. Evans in their individual capacities for compensatory and punitive damages for putting him in a cell on August 1, 2021, with a non-working toilet full of feces and urine which were also smeared on the floor and walls in violation of the Eighth Amendment[.]" *Id.* Seventh, he is proceeding "against Lt. Talbot and Sgt. Miller in their individual capacities for compensatory and punitive damages for putting rock salt in his food on March 16, 2022, in violation of the Eighth Amendment[.]" *Id.* Eighth, he is proceeding "against Warden John Galipeau in his official capacity for injunctive relief to obtain constitutionally adequate food and to be free from psychological victimization[.]" *Id.*

    The defendants filed a motion for summary judgment, arguing Knight did not exhaust his administrative remedies before filing suit. ECF 33. Knight filed a response and the defendants filed a reply. ECF 43, 44. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). Nevertheless, "[f]ailure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). However, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

At all times relevant to Knight's complaint, the prison had a grievance process in effect entitled "Offender Grievance Process, Policy and Administrative Procedure 00-02-301." ECF 33-1 at 2; ECF 33-2. As relevant here, the Offender Grievance Process provides that an offender wishing to submit a grievance shall submit a completed grievance form no later than ten (10) business days from the date of the incident giving rise to the complaint. ECF 33-2 at 9. "The Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form within ten (10) business days of receipt." *Id.* "If an offender does not receive either a receipt or a

4

rejected form from the Offender Grievance Specialist within ten (10) business days of submitting it, the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." *Id*. If the Offender Grievance Specialist accepts the grievance, he "has fifteen (15) business days from the date the grievance is recorded to complete an investigation and provide a response to the offender, unless the time has been extended." *Id*. at 10. "If the offender receives no grievance response within twenty (20) business days of the Offender Grievance Specialist's receipt of the grievance, the offender may appeal as though the grievance had been denied." *Id*. at 12.

The parties provide evidence showing Knight submitted and attempted to submit numerous grievances that are potentially relevant to his claims in this lawsuit. The court will address each relevant grievance before applying the grievances to Knight's claims.

**I.     Relevant Grievances**

*Grievance 134589*

On November 2, 2021, Knight submitted Grievance 134589, complaining that correctional officers were antagonizing him, treating him unjustly, stealing his property and clothing, denying him proper clothing, screening and sharing his communications with other inmates, defaming his character, and tampering with his food. ECF 33-4 at 11. The Grievance Specialist accepted this grievance in part and rejected it in part, stating:

5

> Your grievance as submitted should have been returned to you unprocessed as you state multiple claims and an incident date that spans over a months' time. As submitted your claims cannot be investigated nor substantiated as you do not indicate any names nor incident dates. I will however address the clothing claims.

*Id.* at 1. Regarding the clothing claims, the Grievance Specialist denied Grievance 134589 on its merits, stating that Knight had been given the appropriate amount of clothing and could file a claim for compensation for any lost or stolen property. *Id.* Knight submitted a Level I appeal to the warden, arguing he had not received adequate clothing. *Id.* at 6. The warden denied Knight's Level I appeal. *Id.* Knight submitted a Level II appeal to the Department Grievance Manager, which was likewise denied. *Id.* at 1; ECF 33-3.

The defendants concede that Knight fully exhausted Grievance 134589. ECF 34. However, they argue he only exhausted Grievance 134589 in regard to his allegations the defendants stole his clothing and denied him adequate clothing, as he did not appeal the rejection of his remaining allegations or resubmit those allegations in subsequent grievances. *Id.* at 5-6. Because Knight does not dispute this assertion, the court accepts as undisputed that Knight fully exhausted Grievance 134589 only in regard to his allegations the defendants stole his clothing and denied him adequate clothing.

*November 18, 2021, grievance*

On November 18, 2021, Knight submitted a grievance complaining Officer Cheeks had laughed and joked along with a crew of night porters while they antagonized him regarding a recent phone call between him and his wife and repeated

6

specific things he had said on the phone call. ECF 33-5 at 2. Knight explained that this had been a "continuous thing" where correctional officers were sharing the contents of his phone conversations, mail, and grievances with other inmates so the inmates would antagonize and threaten him. *Id*. Knight asserted that, as a result, he had received constant threats from other inmates. *Id.* He requested as relief that the correctional officers be reprimanded and told to leave him alone. *Id.* On January 6, 2022, the grievance office rejected Knight's November 18 grievance on the ground that it requested staff discipline as relief. *Id.* at 1; ECF 33-1 at 9. Knight was given five days to correct and resubmit this grievance, but did not do so. *Id.*

      Knight attests he was prevented from correcting and resubmitting his rejected November 18 grievance because the defendants had threatened and intimidated him and he "feared the consequences" of trying to exhaust. ECF 43-1 at 2. Specifically, he attests he was subjected to threats if he continued to file grievances and the defendants intimidated him by moving him to the most violent dorm in the prison and informing the inmates he was a snitch to make the environment hostile towards him. *Id.* In their reply, the defendants do not dispute that Knight was threatened and intimidated to prevent him from correcting and resubmitting his November 18 grievance. ECF 44. The court therefore accepts that as undisputed, which shows the grievance process was unavailable to Knight in regard to his November 18 grievance. *See Ross v. Blake*, 578 U.S. 632, 644 (2016) (an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

*November 24, 2021, grievances*

Knight attests he submitted five grievances to Caseworker Kennerk on November 24, 2021, but Caseworker Kennerk never submitted these grievances to the grievance office. ECF 43-1 at 2. Knight attests these grievances complained of correctional officers sharing the contents of his phone calls with other inmates, telling inmates to bang on doors to keep him awake, and contaminating his breakfast trays. *Id.*; ECF 2-1 at 13.

In their reply, the defendants do not dispute that Knight provided five grievances to Caseworker Kennerk on November 24, or that Caseworker Kennerk never provided these grievances to the grievance office. ECF 44. Instead, they argue Knight still had available remedies he did not exhaust because the grievance process required him to appeal these unanswered grievances as if they had been denied. *Id.* at 1-2. However, the Offender Grievance Process only provides that, "If the offender receives no grievance response within twenty (20) business days *of the Offender Grievance Specialist's receipt of the grievance*, the offender may appeal as though the grievance had been denied." ECF 33-2 at 12 (emphasis added). Here, because it is undisputed the Grievance Specialist never received Knight's November 24 grievances, there is no evidence the grievance process allowed Knight to appeal these grievances as if they had been denied. Thus, the undisputed facts show Caseworker Kennerk made Knight's administrative remedies unavailable in regard to his November 24 grievances by failing to provide these grievances to the grievance office.

*March 27, 2022, grievances*

Knight attests he submitted three grievances to the grievance office on March 27, 2022, and never received any response from the grievance office. ECF 43 at 3; ECF 43-1 at 4. Knight attests these grievances complained of correctional officers telling other inmates about the contents of his communications with his wife, placing rock salt in his food tray, and contaminating other food trays and sacks. *Id.* Moreover, Knight attests and provides evidence he submitted request forms to the Grievance Specialist and warden notifying them he had received no response to these grievances, but again received no response. ECF 43-1 at 4; ECF 43-2 at 14.

The defendants do not dispute that Knight submitted three grievances to the grievance office on March 27, or that he received no receipt or response from the grievance office. Instead, they again argue the grievance process required Knight to appeal these unanswered grievances as if they had been denied. ECF 44 at 1-2. However, because there is no evidence the Grievance Specialist ever sent Knight any response or receipt for these grievances, there is no evidence Knight was allowed to appeal these grievances as if they had been denied. *See* ECF 33-2 at 12. Thus, the undisputed facts show the grievance office made Knight's administrative remedies unavailable in regard to his March 27 grievances by failing to respond to the grievances. *See Dole*, 438 F.3d at 809 ("a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance.").

In summary, the undisputed facts show Knight fully exhausted Grievance 134589 in regard to his allegations the defendants stole his clothing and denied him adequate

clothing, and his administrative remedies were unavailable in regard to his November 18 grievance, November 24 grievances, and March 27 grievances. It must now be determined how these grievances apply to Knight's claims in this lawsuit.

## II. Knight's Claims

Knight is proceeding against the defendants on eight claims. Each claim must be addressed individually to determine whether he exhausted the claim prior to filing this lawsuit.

First, Knight is proceeding against Sgt. Flakes for "labeling him a snitch and encouraging inmates to attack him on June 27, 2021, August 11, 2021, February 6, 2022, February 8, 2022, February 14, 2022, February 15, 2022, and February 17, 2022[.]" ECF 9 at 15. The defendants argue Knight never exhausted any grievance related to any of the incidents alleged in this claim. ECF 34 at 4-7. In his response, Knight does not argue or provide any evidence he ever submitted any grievance complaining of any of these incidents. ECF 43. Instead, he provides evidence only that he submitted grievances in November 2021 and March 2022, which did not address these incidents and could not have been timely to complain about any of these incidents. Therefore, because the defendants have provided evidence Knight did not fully exhaust any grievance related to the incidents alleged in this claim, and Knight provides no evidence he submitted any grievance addressing these incidents, the defendants have met their burden to show Knight did not exhaust this claim. Summary judgment is warranted in favor of the defendants on Knight's first claim.

10

Second, Knight is proceeding "against Officer Shelby in his individual capacity for compensatory and punitive damages for creating a substantial risk of harm by labeling him a snitch and encouraging an inmate to attack him on August 1, 2021, in violation of the Eighth Amendment[.]" ECF 9 at 15. The defendants argue Knight did not exhaust any grievance related to this claim. In his response, Knight provides no evidence he submitted any grievance complaining of Officer Shelby's conduct on August 1, 2021, or that he submitted any grievance that could have been timely to complain about this incident. Therefore, because the defendants have provided evidence Knight did not exhaust any grievance related to this incident, and Knight provides no evidence he submitted any grievance addressing this incident, the defendants have met their burden to show Knight did not exhaust this claim. Summary judgment is warranted in favor of the defendants on Knight's second claim.

Third, Knight is proceeding "against Officer Cheeks in his individual capacity for compensatory and punitive damages for creating a substantial risk of harm by repeatedly labeling him a snitch who stole from his Muslim brothers in 2021, in violation of the Eighth Amendment[.]" ECF 9 at 15. Here, the undisputed evidence shows Knight submitted several grievances relevant to this claim. Specifically, in his November 18 grievance, Knight complained that Officer Cheeks and other correctional officers had shared the contents of his phone conversations, mail, and grievances with other inmates so the inmates would antagonize and threaten him, and that he had received constant threats as a result. Additionally, Knight complained in his November 24 and March 27 grievances that correctional officers had been telling other inmates

11

about the contents of his communications. Construing these facts in the light most favorable to Knight, these grievances put the prison on notice of Knight's complaint that Officer Cheeks was subjecting him to a risk of harm by labeling him as a snitch to other inmates. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (holding that exhaustion is designed to provide the prison with notice of the problem and give them an opportunity to fix it). Thus, because the undisputed facts show Knight attempted to submit grievances related to this claim but his administrative remedies were not available, the defendants have not met their burden to show Knight had available administrative remedies he did not exhaust. Summary judgment must be denied on Knight's third claim.

Fourth, Knight is proceeding "against Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, and Caseworker J. Kennerk in their individual capacities for compensatory, and punitive damages for maliciously and sadistically psychologically victimizing him to exacerbate his mental illness and encourage him to commit suicide in violation of the Eighth Amendment[.]" ECF 9 at 15-16. Here, the undisputed evidence shows Knight submitted several grievances relevant to this claim. Specifically, Knight complained in Grievance 134589 that correctional officers were antagonizing him by stealing his clothing and denying him adequate clothing. Additionally, Knight complained in his November 18 grievance that correctional officers had been continuously sharing the contents of his mail, phone conversations, and grievances with other inmates so they would antagonize and threaten him. Moreover, Knight complained in his November 24 and

March 27 grievances that correctional officers had been telling other inmates about the contents of his communications and contaminating his food. Construing these facts in the light most favorable to Knight, these grievances put the prison on notice that correctional officers were psychologically victimizing Knight. *See Maddox*, 655 F.3d at 722. Thus, the undisputed facts show Knight exhausted one grievance related to this claim and his administrative remedies were unavailable when he attempted to exhaust additional grievances related to this claim. Therefore, the defendants have not met their burden to show Knight did not exhaust his administrative remedies in regard to this claim. Summary judgment must be denied on Knight's fourth claim.

Fifth, Knight is proceeding "against Officer Jenkins and Officer Rupert in their individual capacities for compensatory and punitive damages for putting him in a cell with feces and urine smeared on the floor where he was left to sleep on July 29, 2021, and for giving him a mat soiled with feces and urine on August 2, 2021, in violation of the Eighth Amendment[.]" ECF 9 at 16. The defendants argue Knight never exhausted any grievance related to this claim. In his response, Knight does not argue or provide any evidence he ever submitted any grievance complaining of the conditions of his cell. Therefore, because it is undisputed Knight did not submit any grievance related to this claim, the defendants have met their burden to show Knight did not exhaust this claim. Summary judgment is warranted in favor of the defendants on Knight's fifth claim.

Sixth, Knight is proceeding "against Officer Shelby and Officer R. Evans in their individual capacities for compensatory and punitive damages for putting him in a cell on August 1, 2021, with a non-working toilet full of feces and urine which were also

smeared on the floor and walls in violation of the Eighth Amendment[.]" *Id.* As discussed above, Knight does not argue or provide any evidence he ever submitted any grievance complaining of the conditions of his cell. The defendants have therefore met their burden to show Knight did not exhaust this claim. Summary judgment is warranted in favor of the defendants on Knight's sixth claim.

Seventh, Knight is proceeding "against Lt. Talbot and Sgt. Miller in their individual capacities for compensatory and punitive damages for putting rock salt in his food on March 16, 2022, in violation of the Eighth Amendment[.]" *Id.* Here, it is undisputed that Knight complained of this conduct in his March 27 grievances, and the grievance office made the grievance process unavailable by failing to respond to these grievances. Therefore, the defendants have not met their burden to show Knight had available administrative remedies he did not exhaust. Summary judgment must be denied on Knight's seventh claim.

Lastly, Knight is proceeding "against Warden John Galipeau in his official capacity for injunctive relief to obtain constitutionally adequate food and to be free from psychological victimization[.]" *Id.* Here, because the defendants did not meet their burden to show Knight did not exhaust his fourth claim (alleging that correctional officers were psychologically abusing him) and his seventh claim (alleging that correctional officers were contaminating his food), they likewise have not met their burden to show Knight did not exhaust this claim. Summary judgment must be denied on Knight's eighth claim.

For these reasons, the court:

14

(1) GRANTS the defendants' motion for summary judgment (ECF 33) with respect to Knight's first, second, fifth, and sixth claims, but DENIES it with respect to Knight's third, fourth, seventh, and eighth claims; and

(2) REMINDS the parties this case is now proceeding only on Knights remaining claims:

   a. against Officer Cheeks in his individual capacity for compensatory and punitive damages for creating a substantial risk of harm by repeatedly labeling him a snitch who stole from his Muslim brothers in 2021, in violation of the Eighth Amendment;

   b. against Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, and Caseworker J. Kennerk in their individual capacities for compensatory, and punitive damages for maliciously and sadistically psychologically victimizing him to exacerbate his mental illness and encourage him to commit suicide in violation of the Eighth Amendment;

   c. against Lt. Talbot and Sgt. Miller in their individual capacities for compensatory and punitive damages for putting rock salt in his food on March 16, 2022, in violation of the Eighth Amendment; AND

   d. against Warden John Galipeau in his official capacity for injunctive relief to obtain constitutionally adequate food and to be free from psychological victimization.

SO ORDERED on November 23, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT