UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AUSTIN KNIGHT, <br><br> Plaintiff, <br><br> v. <br><br> FLAKES, BOROLOV, CHEEKS, WEBB, HOSKINS, SHELBY, R. EVANS, CAINE, TALBOT, TRIM, MILLER, J. KENNERK, and JOHN GALIPEAU, <br><br> Defendants. | CAUSE NO. 3:22-CV-394-JD-MGG |

OPINION AND ORDER

Austin Knight, a prisoner without a lawyer, is proceeding in this case "against Warden John Galipeau in his official capacity for injunctive relief to obtain constitutionally adequate food and to be free from psychological victimization." ECF 49 at 15. Knight filed a motion seeking a preliminary injunction ordering the Warden to intervene to stop the alleged contamination of his food and psychological victimization. ECF 57. Relevant to the injunctive relief claim, Knight is proceeding "against Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, and Caseworker J. Kennerk in their individual capacities for compensatory, and punitive damages for maliciously and sadistically psychologically victimizing him to exacerbate his mental illness and encourage him to commit suicide. . .." [1] ECF 49 at 15.

---

[1] Knight also has two claims for monetary damages which are not relevant to the preliminary injunction motion addressed in this order.

In the complaint, Knight alleged it is widely known he has a history of mental illness and has attempted suicide several times. He alleged the correctional officers deliberately pushed him to commit suicide in numerous ways including by making jokes about him, threatening to kill him or have him killed, allowing/helping inmates steal his commissary, taunting him and allowing inmates to taunt him, threatening to attack him, and telling him he was dead because he had HIV.

In his declaration in support of the preliminary injunction motion, he alleges "the psychological victimization has never stopped . . .." ECF 57-2 at ¶ 1. He alleges officers share the content of his legal work and phone calls, call him a snitch, shut off his lights, and slander him to other inmates. *Id*. at ¶¶ 3, 12, 14, and 20. He alleges his property is being stolen or broken. *Id*. at ¶¶ 4, 7, 10, 23, and 27. He alleges his calls are being terminated when he tries to tell what is happening to him. *Id*. at ¶¶ 15, 18, 29, and 32. He alleges his drinking water has been contaminated and his laundry has been returned unwashed. *Id*. at ¶¶ 16 and 19. He alleges feces has been placed on his clothing, bedding, commissary, bowls, and cups. *Id*. at ¶¶ 26, 28, 30, and 31. He alleges he is "told every day that it is just going to get worse." *Id*. at ¶ 34.

In response to the preliminary injunction motion, the Warden argues Knight has the burden of proof. The Warden is correct. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Warden argues the declaration of Trenét Worlds should not be considered because it merely repeats what Knight told him. The Warden is correct.

Worlds' declaration contributes nothing to Knight's case. The Warden argues Knight is receiving constitutionally adequate meals from a third-party contractor. Knight's preliminary injunction filings and his reply brief assert the food he buys from commissary is contaminated, but says nothing about not receiving constitutionally adequate meals. There is no basis for preliminary injunctive relief related to his commissary food because "[h]e does not have a liberty interest in . . . commissary privileges . . .." *Burnett v. Butts*, No. 22-1198, 2023 WL 5276605, at *3 (7th Cir. August 16, 2023).

The Warden argues Knight has provided no corroborating witnesses and has offered only his own testimony in support of his request for preliminary injunctive relief. This is true, but the testimony of one witness is sufficient. *See* Federal Civil Jury Instructions of the Seventh Circuit 1.17. The Warden argues Knight's allegations are vague because he did not name who committed each alleged act of psychological torture other than by alleging they were committed by staff or inmates. It is true Knight's preliminary injunction materials are not specific, but his complaint clearly identifies the relevant staff as Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, and Caseworker J. Kennerk.

The Warden's response to the preliminary injunction motion does not provide any evidence disputing that those nine prison employees are maliciously and sadistically psychologically victimizing Knight to exacerbate his mental illness and encourage him to commit suicide. The only evidence he presents in opposition to this preliminary injunction motion is the declaration of a medical records clerk who states

3

Knight has not sought medical treatment for exposure to human waste in the past year. ECF 95-1.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). Here, the uncontradicted evidence is that Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, and Caseworker J. Kennerk have psychologically victimized Knight to exacerbate his mental illness and encourage him to commit suicide in various ways including threatening to kill him or have him killed, allowing/helping inmates to steal his commissary, taunting him and allowing inmates to taunt him, and threatening to attack him. The undisputed evidence is that these events continue to occur and Knight has been told they will get worse. The Warden's evidence showing that Knight has not sought medical treatment for exposure to human waste raises credibility concerns about Knight's allegation that his clothing, bedding, and commissary food have been intentionally contaminated with feces, but it does nothing to address the broader claims of psychological torture intended to push Knight to commit suicide.

4

Some evidence rebutting those allegations, if it existed, should have been relatively easy for the Warden to gather and present. The absence of such evidence is disquieting. Knight's undisputed testimony demonstrates that he is likely to succeed on the merits of his permanent injunction claim.

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Here, it is impossible to know when or if Knight will attempt suicide if he continues to be in proximity with Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, and Caseworker J. Kennerk. However, given his undisputed history of suicide attempts, it is reasonable to conclude he is at risk of doing so again given his undisputed description of events. Such an attempt could easily cause irreparable harm even if he did not succeed in killing himself.

As to the third prong, the balance of equities tips in Knight's favor because the Eighth Amendment prohibits harassment and psychological torture intended to increase the likelihood an inmate will be physically injured. *See Beal v. Foster*, 803 F.3d 356 (7th Cir. 2015), and *Dobbey v. Ill. Dep't of Correction*, 574 F.3d 443, 446 (7th Cir. 2009).

5

Moreover, a narrowly tailored injunction will impose a minor burden on the prison as compared with the potential of serious injury or death if Knight attempts suicide.

As to the fourth prong, an injunction is in the public interest because the public expects State officials to uphold their constitutional duty to protect inmates and the warden did not provide evidence disputing Knight's fundamental allegations about being psychologically tortured. Therefore, the preliminary injunction motion will be granted. However, in selecting an appropriate remedy, the court recognizes

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted).

The constitution requires that Knight be protected from victimization by Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, Caseworker J. Kennerk, and any inmates who may have been permitted or encouraged to participate with them. It is unclear how to accomplish this in the least intrusive way for the prison. One solution would be to transfer Knight to a different prison, but that is not the only option. The Warden must pick one, implement it immediately, and promptly report what he has done. So long as Knight remains segregated from those identified in this order until the permanent injunction claim is

6

resolved, the Warden may change where Knight is housed so long as he remains segregated as ordered.

For these reasons, the court:

(1) GRANTS the preliminary injunction motion (ECF 57);

(2) ORDERS Warden John Galipeau in his official capacity to separate Austin Knight from Sgt. Flakes, Officer Borolov, Officer Cheeks, Officer Webb, Officer Shelby, Officer R. Evans, Lt. Caine, Sgt. Trim, Caseworker J. Kennerk, and any inmates who may have been permitted or encouraged by them to threaten, attack, or psychologically victimize him;

(3) DIRECTS the clerk to fax or email a copy of this order to Warden John Galipeau at the Westville Correctional Facility and to the Commissioner of the Indiana Department of Correction at the Department's Central Office;

(4) ORDERS Warden John Galipeau in his official capacity (or the acting warden who receives this notice) to personally provide written confirmation of receipt of this order immediately upon receipt; and

(5) ORDERS Warden John Galipeau in his official capacity (or the acting warden at the time) to personally provide written confirmation within 24 hours of receipt of this order that Austin Knight has been separated as ordered.

SO ORDERED on October 16, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT